UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
UNITED STATES OF AMERICA,

                                                                                  20-cr-301-3 (PKC)
                                                                                  23-cv-4591 (PKC)

            -against-                                     OPINION AND ORDER

ANDRES BELLO,

                           Defendant.
-----------------------------------------------------------x

CASTEL, U.S.D.J.

        Andres Bello, who is proceeding pro se, moves to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, urging that the performance of his counsel fell below the standard of effectiveness required under the Sixth Amendment. See Strickland v. Washington, 466 U.S. 688 (1984). Bello also has filed an Amended Petition and Second Amended Petition that raise additional grounds for relief. (ECF 322, 328, 330.) Given Bello's pro se status, the Court considers the entirety of Bello's submissions and reads them "to raise the strongest arguments that they suggest." Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quotation marks omitted). The government has filed a response that addresses all arguments made by Bello. (ECF 339.)

        For the reasons that will be explained, Bello's motion will be denied.

LEGAL STANDARDS.

        A person in federal custody may collaterally attack a final judgment in a criminal case based on "a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in complete miscarriage of justice.'" Graziano v. United States, 83 F.3d 587, 589-90 (2d Cir. 1996) (citation

omitted).  Review of a section 2255 motion "is 'narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources.'"  United States v. Hoskins, 905 F.3d 97, 102 (2d Cir. 2018) (quoting Graziano, 83 F.3d at 590).  An evidentiary hearing may be necessary if the motion "set[s] forth specific facts supported by competent evidence," but not if the factual assertions are "vague, conclusory, or palpably incredible."  Gonzalez v. United States, 722 F.3d 118, 130-31 (2d Cir. 2013).

A defendant asserting that counsel's performance was constitutionally deficient under the Sixth Amendment must satisfy a two-prong test.  "[A] convicted defendant must show both (a) 'that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms,' and (b) 'that the deficient performance prejudiced the defense,' i.e., 'that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'"  Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 688, 687).  In deciding whether counsel's performance was objectively reasonable, a court "must make 'every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time,' and 'must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'"  Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 689).  In deciding the prejudice prong, a court must "determine whether, but for counsel's deficient performance, 'there is a reasonable probability that . . . the result of the proceeding would have been different,' for an 'error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.'"  Henry, 409 F.3d at 63 (quoting Strickland, 466 U.S. at 694, 691).

A defendant's testimony at a plea allocation "carries such a strong presumption of accuracy that a district court does not, absent a substantial reason to find otherwise, abuse its discretion in discrediting later self-serving and contradictory testimony as to whether a plea was knowingly and intelligently made." United States v. Juncal, 245 F.3d 166, 171 (2d Cir. 2001). "A defendant's bare allegations in a § 2255 petition cannot overcome his contrary statements under oath during a plea allocation, which must be given presumptive force of truth." Mejia v. United States, 740 F. Supp. 2d 426, 429 (S.D.N.Y. 2010) (Marrero, J.).

BACKGROUND.

The S2 Superseding Indictment charged Bello with participating in a narcotics distribution conspiracy involving five kilograms and more of substances containing a detectible amount of cocaine, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A) (Count One), and with aiding and abetting a murder carried out using a firearm during and in relation to that narcotics conspiracy, in violation of 18 U.S.C. §§ 2 and 924(j) (Count Two). (ECF 88.)

Bello's offense conduct is described in his Final Presentence Investigation Report ("PSR"). (ECF 292.) Bello did not object to the facts contained in the PSR at the time of sentencing and raises no issue on this motion. (ECF 313 at 3.) In the early-morning hours of April 18, 2020, Bello and certain of his co-defendants attempted to purchase one kilogram of cocaine for $33,000 from a group of sellers that included Jorge Miguel Cabrera. (PSR ¶¶ 18-19.) However, the sellers had arranged to provide the purchasing group with "sham drugs" instead cocaine. (PSR ¶ 22.)

About a minute after the money changed hands, the sellers of the sham drugs, including Cabrera, attempted to speed away in their vehicles. (PSR ¶¶ 23-24.) Humberto Rodriguez, who is a co-defendant of Bello's, discharged a firearm at the fleeing vehicles before

driving away. (PSR ¶¶ 24-25.) Bello told a cooperating witness that he supplied Rodriguez with that firearm. (PSR ¶ 30.) Law enforcement arrived to the scene and observed a crashed vehicle. (PSR ¶ 18.) Cabrera was the driver of that vehicle, and he was critically injured by a bullet that lodged near his spine. (PSR ¶ 18.) On May 14, 2020, Cabrera died from complications arising from the gunshot wound. (PSR ¶ 18.)

On May 2, 2020, in Newburgh, New York, a state trooper conducted a traffic stop of a vehicle in which Bello was sitting in the front passenger seat. (PSR ¶ 31.) About 2.5 kilograms of cocaine was recovered in the search. (PSR ¶ 31.) Bello was arrested on May 7, 2020. (PSR ¶ 33.)

Originally, Bello was represented by a member of the CJA panel with a second lawyer learned in the law of capital cases. (ECF 29.) Bello's original CJA counsel was replaced with a member of the CJA capital panel, but only after Bello received advice from Bello's learned counsel on the wisdom of the substitution. (ECF 44, 53, 57.)[1] Eight months later, Bello sought new counsel, and James Roth was appointed to represent him pursuant to the Criminal Justice Act. (Minute Entry of Apr. 2, 2021.) Several months thereafter, Megan Wall-Wolff was added to Bello's defense team at the request of Mr. Roth. (ECF 164.) A trial was scheduled to commence on February 14, 2022. (ECF 186.) On February 10, 2022, the Court conducted a change-of-plea hearing at which Bello entered a plea of guilty to Count Two of the S2 Indictment. (ECF 246.)

Bello entered his plea pursuant to a plea agreement. (ECF 339-1.) The plea agreement detailed the parties' differing positions as to whether Bello was a career offender under the United States Sentencing Guidelines and the corresponding consequences as to

---

[1] Learned counsel withdrew with the Court's permission after the government decided not to seek the death penalty. (ECF 68.)

whether Bello should fall within Criminal History Category IV or Criminal History Category VI under the Guidelines. (Id. at 2-3.) The parties agreed to a stipulated Guidelines range of 262 to 405 months, which reflected the upper and lower bounds of the applicable Guidelines range, depending on whether Bello was categorized as a career offender. (Id. at 3.) The parties agreed that neither a downward nor upward departure was warranted. (Id.) The parties also agreed that the sentence would be determined solely by the Court, and that the Court could impose the statutory maximum sentence. (Id. at 4.)

At Bello's plea allocution, the Court asked a series of questions intended to ensure that Bello was competent to enter a plea of guilty and was doing so voluntarily. (ECF 246 at 3-5.) Bello confirmed his understanding of the rights he would be giving up in exchange for pleading guilty. (Id. at 5-8.) When asked whether he was satisfied with his lawyers' representation, Bello answered in the affirmative. (Id. at 5.) Bello confirmed that he had discussed the charges and the underlying evidence with his lawyers. (Id.) He also confirmed that he had read the plea agreement, executed it, understood its terms and discussed it with his counsel. (Id. at 10-11.) He confirmed that he had not been threatened or promised anything of value in exchange for entering the plea agreement or pleading guilty. (Id. at 11.)

The Court summarized Count Two of the Superseding Indictment and the government described the elements of the crime charged. (Id. at 8, 13-14.) The Court explained to Bello that the charge carried a maximum sentence of life and a mandatory minimum term of five years. (Id. at 8.) The government summarized the evidence that it intended to present if the case proceeded to trial. (Id. at 14.) Bello then explained in his own words "what you did that leads you to believe that you are guilty of the crime charged in Count Two." (Id.) Bello stated:

> On April 18, 2020, in the Bronx, I and others were going to buy cocaine from another group. Three of us were in my apartment at

> 808 East 175th Street, New York.  We went down to the street with a bag of money to buy the cocaine from the sellers.  I understood that if something did go wrong with the purchase, a gun could be used to kill someone.  When the sellers started to drive away, another person who was with us started shooting at the car, hitting one of the sellers in the car.  The seller died because of his injuries.

(Id. at 14-15.)  Bello confirmed that he understood his actions to be "wrong and unlawful," and that he knew that someone in his group had a firearm.  (Id. at 15-16.)  Bello then entered a plea of guilty, and the Court accepted his plea.  (Id. at 16-17.)

Bello's sentencing hearing took place on November 16, 2022.  (ECF 313.)  The PSR classified Bello as a career offender, placed him in criminal history category VI and calculated an advisory Guidelines range of 324 to 405 months.  (PSR ¶¶ 67, 121.)  The Office of Probation recommended a below-Guidelines sentence of 180 months' imprisonment.  (PSR at 28-29.)  At the sentencing hearing, defense counsel confirmed that Bello had read and reviewed the PSR.  (ECF 313 at 3.)  The government also explained on the record that it had re-reviewed the facts concerning Bello's career offender status and upon further consideration concluded that Bello fell within Criminal History Category III, placing him within a Guidelines range of 235 to 293 months.  (Id. at 3-7.)  Without objection from the defense, the Court adopted a Guidelines range of 235 to 293 months.  (Id. at 7.)  The Court announced its proposed statement of reasons and proposed a below-Guidelines sentence of principally 212 months' imprisonment.  (Id. at 31.)  Neither Bello nor the government objected to the proposed sentence and the Court imposed sentence.

After Bello made this motion, on July 25, 2023, he filed an executed "Attorney-Client Privilege Waiver (Informed Consent)" form, in which he expressly waived the attorney-client privilege and authorized his former attorneys to give testimony related to the motion.

(ECF 333.)  Ms. Wall-Wolff and Mr. Roth thereafter filed declarations submitted under penalty of perjury that address certain of his factual assertions.  (ECF 334, 335.)

DISCUSSION.

        I.        <u>Bello Does Not Identify a Constructive Amendment to the Indictment.</u>

Bello's Amended Petition asserts that his counsel was ineffective because he "entered a plea of guilty to a crime that he had not been charged with . . . ."  (ECF 328 at 5-6.)  As noted, Count Two of the S2 Indictment charged Bello with aiding and abetting Humberto Rodriguez's murder of Jorge Miguel Cabrera with a firearm "during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count One of this Indictment . . . ."  (ECF 88 ¶ 4.)  Count One, in turn, charged Bello with participation in a conspiracy to distribute and possess with intent to distribute five kilograms and more of a mixture of substances containing a detectable amount of cocaine.  (<u>Id.</u> ¶¶ 1-3.)  As now phrased by Bello, he "entered a plea of guilty to using and abetting the use of a firearm during and in relation to an **attempt** to possess cocaine."  (ECF 328 at 5; emphasis in original.)  Bello also states that "nowhere in the record was there any information as to what Defendant would do with the cocaine once he purchased it. . . ."  (<u>Id.</u> at 5.)

Affording a generous reading to Bello's submission in light of his <u>pro se</u> status, <u>see</u> <u>Green</u>, 260 F.3d at 83, the Court understands Bello to assert that his counsel performed ineffectively by permitting him to plead guilty to a constructive amendment to the indictment. "A constructive amendment occurs where the actions of the court broaden the possible bases for conviction from that which appeared in the indictment." <u>United States v. Bastian</u>, 770 F.3d 212, 220 (2d Cir. 2014) (quotation marks omitted).  The circumstances of a defendant's guilty plea

may give rise to a constructive amendment. Id. If a defendant enters a guilty plea based on such a constructive amendment, that plea may not be knowing and voluntary. Id. at 216-18.

Bello's claim for relief is without merit. "The only elements of a section 846 narcotics conspiracy offense are the existence of a conspiracy and the defendant's willful joining it." United States v. Richards, 302 F.3d 58, 66 (2d Cir. 2002) (quotation marks and citation omitted). Bello expressly allocuted to participation in a narcotics conspiracy, not to a substantive crime of attempted possession. As stated in his own words: "On April 18, 2020, in the Bronx, I and others were going to buy cocaine from another group. Three of us were in my apartment at 808 East 175th Street, New York. We went down to the street with a bag of money to buy the cocaine from the sellers." (ECF 286 at 14-15.) Bello's own words described his participation in a narcotics conspiracy, not attempt or some other offense, and were faithful to the text of the crime charged in Count Two.[2]

Because Bello has not identified a constructive amendment to the S2 Indictment, there is no basis to conclude under Strickland that his counsel's performance fell below the objective standard of reasonableness in permitting Bello to enter a plea of guilty to Count Two.

      II.      Bello Does Not Identify Ineffective Assistance Based on Counsel's Advice about Consecutive Sentences.

At the change-of-plea hearing, the Court advised Bello that Count Two carried a mandatory-minimum sentence of five years' imprisonment, to run consecutive to any other sentence.[3] (ECF 246 at 8.) Bello asserts that the Court's statement was erroneous and that his counsel also erroneously advised him that the crime charged in Count Two carried a mandatory-

---

[2] Similarly, when summarizing the offense at the change-of-plea hearing, the government stated that "the defendant and others engaged in an attempted narcotics purchase." (Id. at 14.)

[3] Though not cited by Bello, the PSR also stated as follows: "In addition, 18 USC 924(j) requires a mandatory minimum term of 60 months' imprisonment that must run consecutively to any other sentence imposed." (PSR at 5.)

minimum sentence to run consecutive to any other sentence. (ECF 330 at 3-4.) Mr. Roth has confirmed in his declaration that he advised Bello that he would face "a mandatory minimum term of imprisonment on Count Two, to run consecutive to any other term of imprisonment." (Roth Dec. ¶ 5.) Ms. Wall-Wolff states that she participated in similar discussions. (Wall-Wolff Dec. ¶ 5.) As will be seen, this was a correct statement of the law as of the date of both the change-of-plea hearing and sentencing.

About seven months after judgment was entered, the Supreme Court held that a sentence under 18 U.S.C. § 924(j) can run either concurrently or consecutively to another sentence. Lora v. United States, 599 U.S. 453, 458-59 (2023). Bello urges that he would have proceeded to trial had he known that his sentence on Count Two could have run concurrently to any sentence imposed under Count One. (ECF 330 at 1-2.)

Prior to Lora, however, the law of this Circuit held that a sentence imposed under 18 U.S.C. § 924(j) was to be imposed consecutively. See, e.g., United States v. Barrett, 937 F.3d 126, 129 n.2 (2d Cir. 2019). Bello's change-of-plea hearing took place on February 10, 2022, his sentencing hearing occurred on November 16, 2022, and judgment was entered on November 23, 2022. (ECF 307.) Lora issued on June 16, 2023.

Accepting Bello's assertions at face value, his counsel accurately and faithfully advised him of the law that was in place at the time of plea and sentencing, as did the Court. Because defense counsel correctly advised Bello on the controlling law, there is no basis to conclude under Strickland that his counsel's performance fell below the objective standard of reasonableness.

III.     Bello Does Not Identify Ineffective Assistance at Sentencing.

Bello urges that his counsel's performance was ineffective at sentencing because counsel did not adequately assert mitigation based on the conditions of his pretrial incarceration, and, separately, because counsel did not emphasize that the victim's own wrongful conduct led to his murder.  (ECF 322 at 5-7; ECF 328 at 7-8.)  Bello's first argument is belied by the record, and on the second argument, counsel acted within his professional judgment by not attributing the victim's murder to the victim's own wrongdoing.

As to the conditions of Bello's confinement, four paragraphs of his sentencing memo described the hardships of pretrial incarceration during the Covid-19 pandemic.  (ECF 297 at 14-16.)  Mr. Roth raised the issue in his oral presentation on behalf of Bello, and separately described an incident in which he credited Bello for saving the life of a suicidal cellmate.  (ECF 313 at 19-20.)  In delivering its statement of reasons, the Court stated, "I've considered also the difficult conditions of anybody who's been housed in a facility during the pandemic."  (Id. at 31.)  Bello's assertion that "counsel failed to seek a reduction in light of mitigation" based on the conditions of confinement during the Covid-19 pandemic is contrary to the record.

Bello also urges that Cabrera "and a group that he was with, had just stolen money from the Defendant, and were attempting to flee the scene of the theft when the victim was killed.  But for the victim's involvement in the robbery of this Defendant, the victim would not have been injured at all.  It is undeniable that the victim's conduct was both wrongful and provoked the offense in this case."  (ECF 328 at 7.)  Bello asserts that his counsel performed ineffectively by failing to emphasize the victim's "wrongful conduct."  (Id.)

Though he framed the issue differently than Bello now proposes, Mr. Roth emphasized that the shooting occurred in a chaotic environment as the culprits of the sham drug

transaction attempted to speed away in their vehicles, with Bello playing a minimal role in the violence:

> So, as we know, the deal went south. And in a split second – And I'm not sure the government picked up on it. But in a split second the one car drives off. The other car drives off. If you look closely, the mirror of the car hits [co-defendant Humberto Rodriguez] while it's pulling off. [Rodriguez] comes to Andres [Bello] in a split second, gets the gun and then fires two shots. The government is correct that [Rodriguez] is more culpable than my client.

(ECF 313 at 12.) The context of Bello's crime, including the actions of the victim, was well-known to the Court at the time of sentencing. To the extent Bello contends that counsel should have more heavily emphasized Cabrera's own acts of wrongdoing, counsel acted comfortably within his professional judgment by not doing so. It likely would have provoked a strong response from the government, the Court or both on the importance of human life, the lack of acceptance of responsibility shown by Bello in attempting to blame the victim, and the hazards of drug trafficking, including the perils of a self-help remedy.[4]

Courts reviewing an ineffectiveness claim "must apply a 'heavy measure of deference to defense counsel's judgments.'" Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) (quoting Strickland, 466 U.S. at 691). Courts "will not normally fault counsel" if an advocacy choice "entails a significant potential downside." Id. (quotation marks omitted). In this instance, there would have been a significant potential downside in advocating that Bello's criminality was in some way mitigated because the victim's actions invited his own murder, and Mr. Roth exercised sound strategic judgment in not advancing such an argument.

There is no basis to conclude under Strickland that the performance of counsel at sentencing fell below an objective standard of reasonableness.

---

[4] Even at that, the Court made the rather obvious point: "If Mr. Bello had not brought a firearm to the drug transaction, Jorge Miguel Cabrera would be alive." (ECF 313 at 28.)

IV.     Bello Does Not Identify Ineffective Assistance Based on Counsel's
        <u>Failure to File a Notice of Appeal.</u>

Bello asserts that his counsel performed ineffectively by failing to file a notice of appeal on his behalf. (ECF 322 at 3-5.) Bello asserts that he reacted with "shock" when he received a sentence of 212 months and "immediately told defense counsel, James M Roth, that he wished to file [a]n appeal." (<u>Id.</u>; emphasis omitted; brackets in original.) Bello states that the decision of whether to file a notice of appeal should be his alone, and that he is dissatisfied with the outcome of his criminal proceedings. (<u>Id.</u>) The Supreme Court has "long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice." <u>Garza v. Idaho</u>, 139 S. Ct. 738, 746 (2019) (quotation marks omitted). Failure to do so will amount to ineffective assistance even where a defendant has waived the right to appeal pursuant to a plea agreement. <u>See</u> <u>id.</u>

In lieu of conducting an evidentiary hearing on a section 2255 motion, a district court has the discretion to consider the facts set forth in sworn testimonial affidavits or declarations. <u>See</u> <u>Chang v. United States</u>, 250 F.3d 79, 85 (2d Cir. 2001). A court need not credit a "generic claim" that is based on a defendant's "highly self-serving and improbable assertions." <u>Id.</u> at 86.

At sentencing, the Court advised Bello of his right to appeal his sentence and that if he requested the Clerk would immediately file a notice of appeal on his behalf. (ECF 313 at 37.) Bello stated that he understood but made no request that a notice of appeal be filed. (<u>Id.</u>)

The attorney declarations submitted by Mr. Roth and Ms. Wall-Wolff are submitted under penalty of perjury pursuant to 28 U.S.C. § 1746. (ECF 334, 335.) Mr. Roth states:

> Mr. Bello never requested that I file a notice of appeal on his behalf. I also did not observe him inform anyone else that he intended to appeal. After his sentence on November 16, 2022 I conducted a video conference with Mr. Bello on November 21, 2022. We discussed his appellate rights. At no time during this conversation did he instruct me to file a Notice of Appeal on his behalf.

(Roth Dec. ¶ 4.) Ms. Wall-Wolff states: "Mr. Bello never requested that I file a notice of appeal on his behalf. I also did not observe him inform anyone else that he intended to appeal." (Wall-Wolff Dec. ¶ 4.)

Bello has filed an unsworn submission in response, urging that the statements of his former attorneys are "grossly insufficient" because they do not explain "what, if any, advice" they gave him about his appellate rights. (ECF 336.) But Bello's initial motion, submitted under penalty of perjury, told a somewhat different story. There, he asserted that after he was sentenced, he "immediately told defense counsel, James M Roth, that he wished to file [a]n appeal," and that he "asked" Roth to appeal the sentence. (ECF 322 at 9, 10.)

Bello's factual assertions are broad and self-serving. In response, his former attorneys have submitted sworn declaration stating that Bello never requested them to file a notice of appeal or stated an intention to appeal. Mr. Roth's declaration includes the date of his video conference with Bello and broadly references a discussion of appellate rights. Bello's unsworn response urges only that Mr. Roth's declaration should have gone into greater detail about the nature of his advice, a matter that is different than failing to heed a client's instruction to file a notice of appeal. Bello has not identified when he purportedly told Mr. Roth that he wished to appeal his sentence – whether, for instance, he did so on the date of sentencing or

during the November 21 video conference, which goes unmentioned by Bello.  Bello does not annex any written direction or request to file a notice of appeal on his behalf or assert that such a communication exists.  The Court need not conduct a hearing to weigh Bello's broad and self-serving assertions against the sworn declarations of his former attorneys, see Chang, 250 F.3d at 86, and concludes that Bello has not identified ineffective assistance based on his attorneys' failure to file a notice of appeal on his behalf.

BELLO'S MOTION BROUGHT UNDER 18 U.S.C. § 3582(c)(1)(a)(i) IS VOLUNTARILY DISMISSED.

Separate from his section 2255 motion, on May 31, 2023, Bello filed a motion for sentencing reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (ECF 321.)  The government did not respond.  On October 4, 2023, the Court issued an Order directing the government to respond within 30 days.  (ECF 342.)  In a filing dated October 12, 2023, Bello made an application to withdraw the motion, explaining that he no longer believes the motion to be meritorious.  (ECF 344.)  The application will be granted, and Bello's section 3582(c)(1)(A)(i) motion will be voluntarily dismissed.

CONCLUSION.

Bello's motion for relief under 28 U.S.C. § 2255 is DENIED.  The Clerk is respectfully directed to terminate the motions (20-cr-301 at ECF 322, 328, 329, 330; 23-cv-4591 at ECF 5) and to close the civil case captioned Bello v. United States, 23 Civ. 4591 (PKC).

Bello's motion brought pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) is voluntarily dismissed.  The Clerk is respectfully directed to terminate the motion and the related motion. (20-cr-301 at ECF 321, 344.)

Bello has not made a substantial showing of the denial of a constitutional right and, accordingly, a certificate of appealability will not issue.  28 U.S.C. § 2253; see Blackman v.

Ercole, 661 F.3d 161, 163-64 (2d Cir. 2011). This Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and in forma pauperis status is denied. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
       October 18, 2023

COPY MAILED TO:

Andres Bello
Reg. No. 87992-054
FCI Ray Brook
Federal Correctional Institution
P.O. Box 900
Ray Brook, NY   12977